**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---------------------------------------------------------x

JAMES POLLARD,
12 Vernon Lane
Centereach, New York,

                Plaintiff,           No. 21-cv-648

      -against-

MERRICK GARLAND in his official
capacity as the Attorney General of the
United States, 950 Pennsylvania Avenue,
N.W., Washington, D.C. 20530,

      and

CHRISTOPHER WRAY in his official capacity
as Director of the Federal Bureau of
Investigation,
J. Edgar Hoover Building
935 Pennsylvania Ave, N.W.,
Washington, D.C. 20535-0001

                Defendants.

---------------------------------------------------------x

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Now comes Plaintiff, James Pollard, by and through undersigned counsel, and complains

of Defendants as follows:

**INTRODUCTION AND SUMMARY OF ACTION**

1.      This complaint seeks, *inter alia,* declaratory and injunctive relief as a result of

Defendants' violation of Plaintiff's Second Amendment and Fifth Amendment rights by i)

barring his ability to purchase firearms; and ii) identifying him in the federal firearms database as

a person prohibited from the lawful possession of firearms.

2.      Plaintiff challenges Defendants' denial of his Second Amendment right to

purchase a firearm and his classification in the National Instant Criminal Background Check

System database as an individual prohibited from legally possessing firearms under 18 U.S.C. § 922.

3.     Plaintiff challenges Defendants' violation of Plaintiff's protected liberty interest because the process at issue implicates his Second Amendment rights and an additional liberty interest based on stigma plus.

4.     Plaintiff is therefore entitled to (i) the removal of all records in Defendants' database(s) reflecting that Plaintiff is a person prohibited from purchasing, receiving, or possessing a firearm; (ii) the transfer of firearms to Plaintiff's possession; (iii) a declaration that Defendants' conduct violates applicable statutory law, the Second Amendment, and the Fifth Amendment; (iv) an injunction against Defendants' conduct which violates applicable statutory law, the Second Amendment and Fifth Amendment; and (v) an award of costs, attorney's fees and any and all other such further and different relief he is entitled to.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§1331, 1343, 1346, 2201, 2202; 18 U.S.C. § 925A; and 42 U.S.C. § 1983 and § 1988, as the United States and the Federal Bureau of Investigation are Defendants and the case arises under the Constitution and laws of the United States.

6. Venue is proper under 28 U.S.C. § 1391(e)(1)(A).

## THE PARTIES

7.     Plaintiff, James Pollard, is a natural person and citizen of New York State, residing in the Town of Centereach, County of Suffolk, State of New York.

8.     Plaintiff has no prohibitors to firearm possession.

9.      Plaintiff has been erroneously denied the purchase of a firearm and is identified in the National Instant Criminal Background Check System ("NICS") database as a "prohibited person", as set forth in detail below.

10.      Defendant United States of America ("USA") is a jural entity and a proper defendant under 18 USC § 925A.

11.      Defendant Merrick Garland is sued in his official capacity as the Attorney General of the United States of America. As the Attorney General, Defendant Garland is responsible for administering and executing the laws, customs, practices, and policies of the United States, and is currently enforcing the laws, customs, practices and policies complained of in this action.

12.      Defendant Christopher Wray is sued in his official capacity as the Director of the Federal Bureau of Investigation ("FBI"). As Director of the FBI, Defendant Wray is responsible for administering and executing the laws, customs, practices, and policies of the FBI, and is currently enforcing the laws, customs, practices and policies complained of in this action. Defendant Wary controls and directs the FBI, the agency that oversees and implements the National Instant Criminal Background Check System Case and the Criminal Justice Information Services Division ("CJIS") of the FBI. The CJIS Division maintains and implements the NICS database and communications system.

## LEGAL FRAMEWORK

### a.   **Applicable Law**

13.      The Gun Control Act of 1968 prohibits certain categories of persons from shipping, transporting, possessing or receiving firearms or ammunition in or affecting interstate commerce. See, 18 U.S.C. § 922(g).

3

14.     18 U.S.C. § 922(g) identifies events and conditions that, *inter alia*, render an individual prohibited from possessing, transferring, and/or receiving firearms. See also, 27 C.F.R. 478.32(a)(1).

15.     To prevent prohibited persons from purchasing firearms, the Brady Handgun Violence Prevention Act of 1993 directed the Attorney General to establish a background check procedure that licensed firearms dealers would be required to consult in order to determine whether the "transfer" of a firearm to a potential buyer would violate federal or state law. See, 18 U.S.C.

§ 922(t)(1).

16.     The Attorney General thereafter established NICS, managed by the FBI Criminal Justice Information Services Division's NICS Section. See, 28 C.F.R. § 25.3.

17.     NICS provides full service to the federal firearms licensees ("FFLs") in 30 states, five U.S. territories, and the District of Columbia. NICS provides partial service to seven states. The remaining 13 states perform their own checks through NICS. The NICS background check verifies that the buyer is not ineligible to purchase or own a firearm. See,

https://www.fbi.gov/services/cjis/nics

18.     In New York State, all retail purchases of firearms must be conducted through an FFL, unless the transaction is between "immediate family". See, N.Y. Gen. Bus. Law Art. 39-DD § 897; 39-DDD § 898. As such, in New York State, every retail transfer (purchase) of a firearm requires a NICS background check.

19.     FFLs are required to perform a background check via NICS prior to the sale or transfer of a firearm.

20.     FFLs are prohibited from selling a firearm to an individual who fails a NICS background check.

21.     It is illegal under federal law for a person to sell a firearm to a "prohibited person", to wit, a person prohibited from lawfully possessing a firearm. See, 18 U.S.C. § 921, § 922.

22.     Where a purchaser is deemed prohibited by the FBI/NICS system from purchasing a firearm, it is impossible for that individual to lawfully purchase a firearm in the State of New York, even where the information in the NICS system incorrect and/or inconclusive.

**b. Burden on NICS to Prove Disqualification from Firearms Possession**

23.     Under 28 C.F.R. § 25.10, the FBI has an obligation to verify the records in its system with the originating agency and take all necessary steps to correct the record in NICS. This is not a discretionary duty.

24.     Under 28 C.F.R. § 25.5, "Validation and data integrity of records in the system":

"(a)     The FBI will be responsible for maintaining data integrity during all NICS operations that are managed and carried out by the FBI. This responsibility includes:

(1) Ensuring the accurate adding, canceling, or modifying of NICS Index records supplied by Federal agencies;

(2) Automatically rejecting any attempted entry of records into the NICS Index that contain detectable invalid data elements;

(3) Automatic purging of records in the NICS Index after they are on file for a prescribed period of time; and

(4) Quality control checks in the form of periodic internal audits by FBI personnel to verify that the information provided to the NICS Index remains valid and correct.

(b)     Each data source will be responsible for ensuring the accuracy and validity of the data it provides to the NICS Index and will immediately correct any record determined to be invalid or incorrect." See, 28 CFR 25.5.

25.     As detailed below, the FBI has failed to adhere to their non-discretionary statutory obligations under 28 C.F.R. § 25.5.

26.     Under 28 C.F.R. § 25.6, upon inquiry from an FFL during a purchase transaction, NICS is required to issue a "proceed" response if no disqualifying information is found in the NICS Index, NCIC, or III; a "delayed" response, if the NICS search finds a record that requires more research to determine whether the prospective transferee is disqualified from possessing a firearm by Federal or state law; or a "denied" response, when at least one matching record is found in either the NICS Index, NCIC, or III that provides information demonstrating that receipt of a firearm by the prospective transferee would violate 18 U.S.C. 922 or state law

27.     Under C.F.R. § 25.2, a "denied" transaction means the "denial of a firearm transfer based on a NICS response indicating one or more matching records were found providing information demonstrating that receipt of a firearm by a prospective transferee would violate 18 U.S.C. 922 or state law."

28.     Under C.F.R. § 25.9, "Retention and destruction of records in the system", "NICS will retain NICS Index records that indicate that receipt of a firearm by the individuals to whom the records pertain would violate Federal or state law. The NICS will retain such records indefinitely, unless they are canceled by the originating agency."

29.     Under C.F.R. §25.10, "Correction of erroneous system information", the FBI is required to "investigate the matter…[and request that] the data source to verify that the record in question pertains to the individual who was denied, or to verify or correct the challenged record. The FBI will consider the information it receives from the individual and the response it receives from the POC or the data source. If the record is corrected as a result of the challenge, the FBI shall so notify the individual, correct the erroneous information in the NICS, and give notice of the error to any Federal department or agency or any state that was the source of such erroneous records."

30.     The FBI is improperly shifting its burden to the individual to follow up with various courts or jurisdictions. This is the same scenario found in *Ross v. Fed. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 903 F. Supp. 2d 333, 341 (D. Md. 2012).

31.     In *Ross*, the district court found that the defendant improperly shifted the burden to the plaintiff to contact the state that supplied alleged prohibiting information to NICS and provide "appropriate documentation and/or update his record." *Id.* at 341. "Nothing in the regulations supports the NICS Section's position that the prospective transferee must disprove the existence of a potentially disqualifying criminal record to avoid all future delays." *Id.* "[t]he regulations make clear that the burden falls on the NICS Section to conduct additional research "to determine whether the prospective transferee is disqualified from possessing a firearm by Federal or state law." 28 C.F.R. § 25.6(c)(1).

32.     If the FBI does not have confirmed information that an individual is, in fact, a prohibited person they must approve the purchase. Placing the burden on the individual to prove s/he is not a prohibited person violates the Second Amendment and is contrary to 28 C.F.R. § 25.

33.     The FBI's denial of firearms transactions based on anything other than a confirmed *de facto* state or federal prohibitor violates the Second Amendment.

34.     Denying a firearm transaction based on incomplete or non-disqualifying information leaves Plaintiff and similarly situated individuals without any remedy prior to the termination of a constitutional right, which violates the right to due process.

35.      This has been an ongoing issue with Defendants and they have been on notice as early as May 8, 2016 when the case *Gregory Michael Ledet v. USA*, in the United States District Court for the District of Columbia, Civil Action No. 1:16- cv-00865-ABJ was filed.  Since that case, at least five others were filed: *Daniel Umbert, et al. v* USA, in the United States District Court for the District of Columbia, Civil Action No. 1:18-cv-01336-TSC; *Robert Boyd Rood v. USA*, in the United States District Court for the District of Columbia, Civil Action No. 1:17-cv-00839-KBJ; *Robert Earl Rowe v. USA*, in the United States District Court for the District of Columbia, Civil Action No. 1:16-cv-01510- APM; and *Charles Norfleet Hughes v. USA*, in the United States District Court for the District of Columbia, Civil Action No. 1:16-cv-01425-APM.

36.     After the filing of the aforementioned cases, the government defendant(s) "voluntarily" provided the relief sought in the actions. In *Umbert*, the government corrected its information to allow three of the plaintiffs to purchase firearms; in the remaining cases, all five plaintiffs were granted certificates to purchase their firearms. The government's post-filing conduct mooted those cases, yet the issues underlying the present action continue to evade review and repeat in Defendants' practices.

37.     The protocols and practices of the NICS system leaves the civil rights of Plaintiff and all others similarly situated violated and without a remedy for resolution short of spending money to retain an attorney to seek redress in the courts.

*July 2016 Denial – NICS First Error*

38.     In 2016, Plaintiff attempted to purchase a firearm from a Federal Firearms Licensee ("FFL") at a local gun store in Suffolk County, New York.

39.     Plaintiff completed the necessary federal form, Form 4473, as required by the Bureau of Alcohol, Tobacco, Firearms, and Explosives (BATFE), and the FFL sent Plaintiff's personal identifying information to be assessed through the NICS system.

40.     Plaintiff's purchase transaction was erroneously denied by NICS.

41.     Plaintiff obtained the transaction number for the attempted purchase, the "NTN", and wrote to the FBI to obtain the grounds for the denial of his firearm purchase.

42.     By letter dated July 6, 2016, the FBI CJIS/NICS Section indicated to Plaintiff that his transaction was denied because he had been convicted of a "serious offense" under New York Penal Law § 265.00(17), which rendered him a person prohibited from possessing firearms.

43.     Plaintiff has never been convicted of either a felony or a "serious offense".

44.     The FBI's July 6, 2016 letter further informed that Plaintiff's appeal was being forwarded to the "Appeal Services Team" of the CJIS for "further processing" and that the "CJIS Division's NICS Section is currently processing cases received in July 2015."

45.     According to the FBI CJIS/NICS Section, Plaintiff's New York conviction was the only prohibiting event that existed for Plaintiff in the NICS system and databases accessed by NICS.

46.     By letter dated June 9, 2017, Plaintiff forwarded to the FBI CJIS/NICS Section a Certificate of Disposition from Suffolk County Criminal Court identifying the charge of which Plaintiff was convicted.

9

47.     The Certificate of Disposition conclusively demonstrated that the offense for which Plaintiff had been convicted was not a prohibiting event or condition -it was neither a "serious offense" enumerated under Penal Law §265.00(17), nor was it punishable by a sentence of incarceration exceeding one year.

48.     Notwithstanding, from 2016 to the present date, NICS has banned Plaintiff from purchasing a firearm in the absence of any evidence that he is a prohibited person. This is so because if NICS denies an individual's purchase of a firearm, the FFL cannot complete the transaction.

49.     So long as NICS communicates to the FFL that prohibiting information exists about an individual, that individual cannot legally purchase a firearm in New York State or any other state that participates in the NICS background check system.

50.     Unless and until NICS communicates to the FFL that the transaction is approved, an indication that the purchaser is not prohibited from possessing firearms (a "prohibited person"), an individual cannot legally purchase a firearm in New York State.[1]

51.     By January 2020, the FBI CJIS/NICS Section had still not responded to Plaintiff regarding the denial of his 2017 firearm purchase, which sought to remove from the NICS system false information that he was prohibited from purchasing and possessing firearms.

52.     Plaintiff retained the undersigned to attempt to remove the false information in the NICS indexing system that was preventing him from purchasing and possessing firearms.

53.     By letter dated January 6, 2020, the undersigned contacted the FBI CJIS/NICS Section Appeal Services Team. The January 6, 2020 letter was accompanied by Plaintiff's

---

[1] In some circumstances not relevant herein, a NICS background may indicate a "delay" status, which will allow the transaction to be completed if no additional response from NICS is received within the following three days. New York State now requires a 30-day waiting period upon notification of a "delay" response from NICS.

fingerprint-based criminal history obtained directly from the New York State Division of

Criminal Justice Services ("DCJS").

54     The NYS DCJS report conclusively demonstrated that Plaintiff's single arrest and

conviction in 1990 was not an enumerated "serious offense" under Penal Law §265.00(17). The

January 6, 2020 letter was also accompanied by a copy of Penal Law § 265.00(17) to illustrate

that Plaintiff's conviction was not an enumerated "serious offense" in Penal Law §265.00(17), as

well as a copy of the July 6, 2016 letter sent by the FBI CJIS/NICS Section to Plaintiff.

***Erroneous February 2020 Denial and Continuing Violations***

55     By letter dated February 24, 2020, the FBI CJIS Section informed, "Based on

further review and investigation, the original prohibitive information has been resolved." The

FBI CJIS Section went on to state,

> "The record contains *potentially* prohibitive arrest(s) lacking court documentation
> containing the final disposition, level of conviction, and underlying charge. The FBI's
> Criminal Justice Information Services Division was unable to nullify the *potential* prohibitor(s).
> If your client has or can obtain documentation that was available at the time of the arrest/court
> proceedings, please provide the court documentation containing the final disposition, level of
> conviction, and underlying charge. To obtain the *potentially* prohibiting arrest(s) and missing
> information, he may contact: Brier Police Department, 2901 228th Street Northwest, Brier,
> WA 98036-8321. When your client has obtained all of the requested documentation listed
> above, please submit them to our office. However, documentation must be received within 88
> days of the date of this letter…Please be advised, a 'no record found' document is not sufficient
> documentation and should not be provided." (emphasis added).

56     The February 24, 2020 letter failed to indicate the substance of the "prohibiting

information".

57     In accordance with the FBI CJIS letter dated February 24, 2020, Plaintiff

contacted the Brier Police Department to obtain "any and all reports that contain the name James

W. Pollard, DOB [redacted].

58.     Plaintiff received a written response from the Records Custodian of the Brier

Police Department dated March 26, 2020, which indicated,

> "after a diligent search, the Brief Police Department has not located any records
> which are responsive to your request."

59.     By letter to the FBI CJIS dated April 30, 2020, the undersigned forwarded the

findings of the Brier Police Department. The letter further indicated that the only contact

Plaintiff had with Brier, Washington law enforcement was in and around 1972 and involved an

unpaid traffic ticket in New York State, which would not prohibit his possession of firearms.

60.     The April 30, 2020 letter requested that NICS provide additional information to

allow Plaintiff to identify the factual basis for the prohibiting information to further investigate.

61.     By letter dated May 15, 2020, the FBI CJIS responded that "the material

submitted [by Plaintiff] is insufficient to establish his eligibility to possess or receive a firearm

because it does not nullify your client's *potential* prohibition because it does not apply to the

*potential* prohibition." (emphasis added).

62.     The FBI CJIS May 15, 2020 letter further informed that the "*potential* federal

prohibition" under 18 U.S.C. § 921(a)(20) and § 922(g)(1) relates to convictions of a crime

punishable by imprisonment for a term exceeding one year or any misdemeanor that is

punishable by a term of imprisonment of more than 2 years." (emphasis added).

63.     The FBI CJIS May 15, 2020 letter further informed,

> "The FBI has verified the accuracy of the *potentially* prohibiting record and was unable to
> nullify the prohibitor. Therefore, no further correspondence concerning this matter will be
> acknowledged by the FBI's CJIS Division." (emphasis added).

64.     The burden is on Defendants, not Plaintiff, to establish the existence of an actual

prohibitor to firearms possession when denying an individual the right to possess firearms and

arbitrarily branding them a "prohibited person." See, 28 C.F.R. § 25.10, which places the obligation and responsibility on the FBI to verify the records in its system with the originating agency.

65.     The FBI CJIS is barring Plaintiff's purchase of firearms based solely on speculation that he may be a prohibited person and shift the burden to Plaintiff to uncover information its investigation failed to yield.

66.     Plaintiff has no ability to disprove Defendants' claims because a review of the records maintained by the Brier County, Washington Police Department reveals that there are no records Plaintiff.

67.     Plaintiff's counsel contacted the Washington State Police for information related to Defendants' claims, however, the Washington State Police had no records demonstrating that Plaintiff was a prohibited person or shedding light on Defendants' claims.

68.     Because the FBI CJIS refused to provide any factual information related to the source of the purported "potentially prohibiting" information and no records exist for Plaintiff to disprove the representations made by the FBI CJIS, Plaintiff's Second Amendment rights will continue to be violated as he will continue to be banned from acquiring firearms in the future.

69.     Because of Defendants' actions and failures to act, Plaintiff is erroneously identified to law enforcement, FFLs, and any other agency with the ability to access and/or obtain information contained in the NICS system as a "prohibited person".

70.     Because Plaintiff is identified as a "prohibited person" by the NICS system, even if he were to somehow acquire a firearm, his possession of a firearm would subject him to criminal penalties, including incarceration, because a NICS background check by third party

would reveal [albeit falsely] that he is identified as a "prohibited person" whose possession of firearms is unlawful.

71.     Plaintiff has none of the prohibiting factors, events, or conditions listed in 28 U.S.C. § 922 that constitute a prohibitor to firearm possession.

## <u>COUNT 1 – VIOLATION OF THE SECOND AMENDMENT</u>

72.     Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

73.     Plaintiff has an individual, preexisting right to possess firearms as protected and guaranteed by the Second Amendment.

74.     Defendants' conduct burdens Plaintiff's Second Amendment rights by prohibiting his purchase of firearms in his state of residence and identifies him as a person prohibited from lawfully possessing firearms.

75.     Defendants have the burden, not Plaintiff, of demonstrating the existence of a longstanding, historically accepted basis to prohibit Plaintiff's possession of firearms.

76.     Plaintiff has a Constitutionally protected right to purchase firearms and, but for Defendants' denial of Plaintiff's purchase, he would be allowed to purchase a firearm from an FFL.

77.     Because Plaintiff is not a prohibited person, Defendants should be immediately enjoined from denying Plaintiff's purchase of firearms.

78.     Plaintiff also requests attorneys' fees and costs be awarded to him and request any other relief that he may be entitled to.

## COUNT II – FIFTH AMENDMENT DUE PROCESS VIOLATIONS
### (Substantive)

79.     Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set forth herein.

80.     The Fifth Amendment to the United States Constitution says to the federal government that no one shall be "deprived of life, liberty or property without due process of law."

81.     In determining the amount of process due, the court should weigh three factors: 1) The interests of the individual in retaining their property and the injury threatened by the official action; 2) The risk of error through the procedures used and probable value, if any, of additional or substitute procedural safeguards; 3) The costs and administrative burden of the additional process, and the interests of the government in efficient adjudication. See, *Mathews v. Eldridge*, 424 U.S. 319 (1976).

82.     Plaintiff has a protected liberty interest at stake because the process at issue implicates his Second Amendment rights and an additional liberty interest based on the stigma plus test as described below.

83.     In *Wisconsin v. Constantineau*, the Supreme Court held that a liberty interest may be implicated "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." 400 U.S. 433, 437, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

84.     This holding has come to be known as the "stigma-plus test." See, *Hart v. Parks*, 450 F. 3d 1059, 1070 (9th Cir.2006). ("the plaintiff must show that the injury to reputation caused the denial of a federally protected right").

85.     In *Humphries v. County of Los Angeles*, 554 F. 3d 1170 - Court of Appeals, (9th Circuit 2008), the Ninth Circuit concluded that California's database of "reports of suspected

child abuse and severe neglect," known as the Child Abuse Central Index or CACI. CAL.
PENAL CODE § 11170(a)(2) violated Due Process because it was extremely difficult to remove
one's name from the registry even if a person could prove they had been erroneously placed on
the Index.

86.     The Second Circuit found a due process violation in similar circumstances in
*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994). Plaintiff's "good name, reputation, honor, and
integrity is at stake because of what the government is doing to him." *Valmonte v Bane*, 18 F3d
992, 999 (2d Cir 1994) citing, *Wisconsin v. Constantineau*, 400 U.S. 433, 437, 27 L. Ed. 2d 515,
91 S. Ct. 507 (1971).

87.     Here, Plaintiff survives the stigma-plus test by (i) suffering harm due to the
erroneous denials by the federal government; law enforcement, firearms dealers, and other
members of the community now believe he is prohibited from owning a firearm due to criminal
activity; (ii) suffering the alteration or extinguishment of "a right or status previously recognized
by state law" i.e., his right to own and purchase firearms.

88.     Plaintiff's due process claim is even greater because he has no means to
demonstrate that he is not a prohibited person other than filing this lawsuit.

89.     For the above reasons, Plaintiff requests this Court find that Defendants have
violated his substantive Due Process rights.

## COUNT III – DECLARATORY JUDGEMENT

90.     Plaintiff repeats and realleges the allegations of the preceding paragraphs as if set
forth herein.

91.     The Declaratory Judgment Act provides, "In a case of actual controversy within
its jurisdiction, any court of the United States may declare the rights and other legal relations of

any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. 2201(a).

92.     Absent a declaratory judgment, Plaintiff will continue to suffer irreparable injury in the future.

93.     There is an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment.

94.     This Court possesses an independent basis for jurisdiction over the parties.

95.     A declaratory judgment regarding the complained of policies will determine the rights and responsibilities of the parties, clarify and settle the legal issues going forward, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this proceeding.

96.     Defendants' laws, customs, practices and policies violate the Second Amendment to the United States Constitution, the Fifth Amendment to the United States Constitution and applicable statutory law, facially and as applied against the Plaintiffs in this action, damaging him.

97.     Plaintiff is therefore entitled to a declaration declaring such laws, customs, policies, and practices unconstitutional.

98.     To date, Plaintiff has expended over $1,500 in costs and attorney's fees, which fees continue to increase.

WHEREFORE, Plaintiffs respectfully request that the Court:

(1)     Order Defendants to correct their records to reflect that Plaintiff is not a person prohibited from purchasing, receiving, or possessing a firearm;

(2)     Order Defendants to allow the transfer of firearms to Plaintiff;

(3)     Declare that Defendants' conduct violates applicable statutory law, the Second

Amendment, and the Fifth Amendment;

(4)     Grant injunctive relief against Defendants' conduct which violates applicable

statutory law, the Second Amendment and Fifth Amendment; and

(5)     Grant Plaintiff an award of costs and reasonable statutory attorney's fees and any

and all other such further and different relief he is entitled to.

Dated: March 10, 2021
      Scarsdale, New York

                    Respectfully submitted,


                    /s/ Amy L. Bellantoni
                    Amy L. Bellantoni, Esq.
                    The Bellantoni Law Firm, PLLC
                    2 Overhill Road, Suite 400
                    Scarsdale, New York 100583
                    (914) 367-0090 (t)
                    (888) 763-9761 (f)
                    abell@bellantoni-law.com
                    DC District Bar No. NY0355
                    *Counsel for Plaintiff*